Our next case for argument is Sutula-Johnson v. Office Depot. Mr. Jean-Pietre. Good morning, Your Honors. May it please the Court. The plaintiff, Daryl Sutula-Johnson, started working for Office Max and was paid partly on commission. Commission was determined when the bill for the order was submitted to the customer. And at that point, regardless of whether the customer had paid for the bill or not, the salesperson, Ms. Johnson, was entitled to her commission. Subsequently, there was a merger between Office Max and Office Depot, and everything remained the same for about a year. After the merger, well, about half a year, I guess, when Office Depot announced it was going to change its commission structure. In essence, it was going to pay its people paid on commission half of what had been paid before. And they said, we've got a plan. Is this the July 14, 2014 announcement? Yes. Yes. Except nobody could find the plan because it wasn't there. And finally, about two months later, in September, there was a plan available, and Ms. Johnson looked at it and said, well, that doesn't apply to my sales because this plan only applies to new sales to new customers. None of my sales that I am being paid for were that. These are all old, continuing customers, all the same stuff they'd ordered before. They're just renewals. So I'm not going to agree to this, and I'm not going to comply, and you shouldn't comply with it because on its face, what you have to do – I don't understand. I'm sorry. I don't understand what her agreement has to do with anything. If your employer says we're changing your compensation, you either accept the new compensation or you go to work for somebody else. You can't say I'm continuing to work for you, but my old compensation continues. That's about the one excluded outcome. Well, Your Honor, with all due respect, that's not what this Court has said. This Court has said you cannot unilaterally change an agreement, an employment agreement, even if – Then how do you factor – I'm sorry. How do you factor in the email from Kristen Sampo? Which email is that, Your Honor? Well, I thought that there was this email that made everything clear in writing. I don't understand, Your Honor. There was a plan of payment. I don't know that there was any email by anybody that intended or purported – Well, there was an email exchange in September of 2014 between Ms. Johnson and, you know, that vice president of employment law. Her name was Kristen Sampo. And it set forth in writing that the policy applied to all commissions, not merely new ones. But that's not what the policy said. If you read the policy, it says it only applies to new orders. So is – I don't see how somebody writing a memo can change – I'm sorry, Your Honor. I'm sorry. It was explained orally to her in July of 2014 at the time that the policy was implemented. Well – It was explained and then followed up with this email. Well, Your Honor, but if you read the policy itself, which is what they said, this is our policy, we want you to sign it, the policy says it only applies to these new things. So you can't just change the policy by saying, no, no, no, I disagree with what it says. It says what it says. What's the exact language? New business? New business from new customers. From new customers. Right. And, more importantly, in March of 2015, now they come out with a whole new plan which does cover all of the sales made by Ms. Johnson. But to go back to Judge Easterberg's question, this court has held in Robinson v. Ada McKinley Community Services that acceptance and consideration cannot be inferred from her continuing to work because you can't unilaterally make a change without something else being given. And given the fact that their own policy said it didn't apply, her continuing to work does not accept something new that doesn't exist. Now, can we talk about, you know, the difference here between commissions and bonuses? Certainly, Your Honor. All right. The commission is payment based on a percentage of the sales that you have made. That's a term of art in the law, and it's set forth in a plethora of cases, all of which we've cited in our brief. Where is it set forth in Illinois as a matter of Illinois law? There are a couple of regulations. One defines a commission as compensation for services performed pursuant to an employment contract. But that oddly treats regular wages as a commission, so it's hard to understand how one could take that seriously. Is there a rule of Illinois law that defines commission the way you would like to define it as payment based on a percentage of value? Commission is the compensation paid to an employee when it is calculated as a percentage on the amount of the transaction. It is the term used to define compensation paid to sales personnel. Harlan versus Sweet, 139, Illinois 2nd, 390, Illinois 1990 cited on page 7 of our reply brief. The Illinois Supreme Court has specifically said that's what a commission is, Your Honor, and that's what we have here. I mean, they changed the name. They call it an incentive, which has no standing under the law. There is no real definition. The Illinois cases have said commissions are included within incentives, and the calculation of these payments never changed one iota. It was always the same. Once a bill was sent to the customer, the percentage amount that was due to the employee was set, and that's been the case from the very beginning of this situation all the way up through the day that Ms. Johnson retired. That's a commission. There's a draw against these payments. I never heard of a draw against a bonus. A draw against a commission is something that's well known, and, you know, it's used to even out payments to employees so that if their sales are All of these payments have all of the earmarks of what the Illinois courts have held are commissions. The Wage Payment and Collection Act and the regulations under the Wage Payment and Collection Act reinforce that. Is it one of those earmarks here, Counsel, that the payments are mandatory as opposed to discretionary? Well. That's an earmark, right, of a commission. Well, the statute says it depends on the agreement between the parties, and here I don't see that there's anything in the policies of the defendant that says they're discretionary. There isn't. Well, they say if you quit. Is that one of the earmarks of a commission? Yeah. I think you want to say yes. Sure. Is it also an earmark of a commission that the commissions or that the payments make up a substantial fraction of the employee's compensation? I don't think that necessarily follows, Your Honor, because there are so many different kinds of programs. I mean, maybe in the Counsel, do you want to say it's irrelevant that your client got more than two-thirds of her compensation in the form of commissions? No, I don't say it's irrelevant, Your Honor. Good. It's one of the considerations, obviously. Right. It's one of the considerations. I mean, as my colleague's questions indicate, we're looking for guidance here from Illinois law to try to distinguish between commissions and bonuses because it's important under the Wage Act, and I'm trying to figure out what's important about that. Is it relevant also that the payments to your client, to the plaintiff in this case, were based upon her individual performance as opposed to team or company-wide performance? Certainly. The defendant is arguing that the change in language from commissions to incentive payments ought to have been a signal to your client that these are no longer commissions. Could you address that question? Given the fact that they're determined the same way and figured the same way and the payments are made based upon the same basis as before, I don't see how changing the label that you attach to it, to a term like incentive, means one thing. I mean, maybe it's a way for the company to try and evade the requirements of the statute and other state statutes in which they do business, but if they really meant to change it to something else, they should have and could have changed it to a term that has some meaning in the law rather than one that has no meaning. And as I've indicated, the Illinois courts have said and this court has said, incentive doesn't really have any meaning in itself. It's just another term and it's included within commission. What percentage of the overall compensation package was the incentive payment? In other words, compared to the base salary? I'm sorry, Your Honor, I didn't understand the question. Oh, dear. I'm wondering what percentage of the overall compensation package was the incentive payment. Your Honor, I don't have that calculation. I can't answer that question. I don't know. Because it depended on what the sales were. Counsel, I think the answer, at least for one of the relevant time periods here, is more than two-thirds was incentive payments. At the latter end? Yes. Certainly not at the beginning. Up until March of 2015, there was no such payments made to the plaintiff, and that part of her claim certainly is not controlled by that. But later on I think you're correct, Your Honor.  to this interim period between July 14, 2014, and March 3, 2015. Right. Ordinarily the rule is the employer changes the rules of compensation, you keep working, you're bound by that, it's employment at will, you can walk away if you're unhappy. But what does the evidence tell us about when the employer actually settled up with your client for that time period? There was no settling up with my client. They just kept paying their commissions as time went on. They didn't do anything to, quote, settle up. They just said, actually in July, we're now paying you at a different rate. Well, okay, yeah. And, in fact, if I may, some of those commissions as of that date that they reduced the payments had already been earned under the prior process or the prior agreement. They can't reduce retroactively what she's already earned. And it's $70,000. Were there any commissions paid on new rates for customers who had been invoiced before July 14th? Yes, that's what I'm saying. Is that in your summary judgment papers? Oh, absolutely. Looks like I'm out of time. Thank you, Your Honor. Thank you, Counsel. Thank you, Counsel. Thank you. Ms. Poquist. Good morning, Your Honors. May it please the Court. At the outset, I'd like to step back for a moment to talk about the fundamental principle that the Illinois Wage Payment and Collection Act does not provide a substantive right to compensation to employees. The purpose of the act is to ensure, and the Seventh Circuit has widely recognized this, to ensure that employers honor their compensation agreements with employees. In this case, I submit that the undisputed facts are that, and Ms. Johnson admitted, that Office Depot compensated her pursuant to the terms of those agreements and her request that she be paid other compensation outside of the terms of those agreements is asking this Court to substantively provide for compensation that's not provided for under the terms of the agreements. Now, under the prior, sorry, under the prior plan, the employees clearly received commission payments. Given the ambiguity in the term incentive payment, why shouldn't we consider it a commission, like the analogous payments in the old plan, rather than a bonus? It's not a term used before this. Okay. Judge, and in context, just by way of background, and I know the Court recognizes this, but this was a merger between two companies of Office Max and Office Depot. When Office Depot decided to basically put everyone on the same compensation plans as it transitioned both companies to merge them together, there was a decision and there was a seat change in the way these sales reps were compensated. Under the Office Max plan, which the records replete with the fact that it had disclaimers, people were employed at will, there was no guarantee of compensation, and it could be amended or terminated at any point. But at that point, Office Depot changed the compensation system to a salary plus a variable incentive compensation. Right. This doesn't really answer Judge Roedner's question. Why shouldn't we hold the ambiguity against your client? I don't believe, Judge, there is an ambiguity. If you look at the Illinois Supreme Court... As to whether this is a bonus or a commission? Judge, if you look, I believe the Illinois Supreme Court would look for guidance to the Illinois Wage Payment and Collection Act regulations that were promulgated by the Department of Labor. If you look at Illinois Administrative Code, Section 300.500, Earned Bonuses, a bonus is compensation given in addition to the required compensation for services performed. The undisputed record... You're not saying these were discretionary, are you? They were, Judge. They were variable because there were terms... There's a big difference. Are you saying it's discretionary or variable? It's variable. She was paid a compensation. Her compensation, her core compensation, which was guaranteed, was that she would receive a salary of $3,400 every two weeks. And this was new. It was not what was under the straight commission plan. $3,400 every two weeks, which is $94,000, I believe, annually. She was eligible for variable compensation for this incentive compensation. She'd made a half a million the year before, right? Correct. This was a change. She had a stand-alone agreement unlike anyone else had. I think the record's clear on that, too. But she was on the same plan as everyone else now. And this plan, because she was entitled to a variable incentive, and that was driven by various targets quarterly, but it was calculated on an annual basis. So she was entitled and she was eligible to these payments so long as she met the terms of the agreement, which were. You're not distinguishing between bonuses and commissions, and that's what I'm asking you to do. Judge, I believe under the Illinois Wage Payment and Collection Act regulations, which define bonuses, this is compensation in addition to the salary that she was paid for all hours worked. Under which thing that defines bonuses? Excuse me? You said it was under one particular thing. Yeah, I'm sorry. It's the Illinois Administrative Code, Title 56, Section 300.500, earned bonuses. If you look at only that phrase in isolation, compensation given in addition to the required compensation for services performed, you've got an argument, right? But don't you also have to distinguish between bonuses and commissions? I believe, Judge. Commissions defined as compensation for services performed pursuant to an employment contract or agreement between two parties, which seems to include everything. Well, I will say that I believe that the commission regulations are perhaps not fully drafted, and as someone who. That's fine. If you were in state court, you might ask the state court to throw them out, but you're not in state court, and you can't take a favorable reading of the definition of bonus and altogether ignore the unfavorable definition of commission. Particularly because you, absent totally in the plan, is an explicit statement that incentive payments are not commissions and are bonuses. It would have been awful easy to do that. So, you know, the expectation is that the payments in the new plan are also commissions. Again, I go back to not only the administrative code, but there are also Illinois court decisions that talk about incentive compensation, and they treat them as bonuses, and I believe one of those decisions is, make sure I don't misspeak, I believe it's the McLaughlin case that we cited in our brief where it talks about, or the Rakos case as well, where they talk about the incentive programs being more akin to a bonus than they would be a commission. So what are the earmarks of a bonus versus a commission? Judge, first of all, these quarterly incentives were calculated on an annual basis. There was a sliding scale depending on your performance through the year, and you had to, if you were at least 125% over your target sales margin, then you received a kicker on what incentive you might receive. If you were below that, and that was judged on an annual basis, so early on in the year unless you were blowing out, and that's where it's variable. Depending upon what your performance is, you may get zero. If you have no sales margin in a quarter, you're still going to receive your base pay. So, therefore, I believe this is more like a bonus because you're always going to get your base salary. Counsel, you know there are plenty of companies that pay salespeople with a base salary plus commissions, right? And referring to the fact that there's a modest base salary here compared at least to this salesperson's performance doesn't really answer the question. Let me just throw out. I'll suggest to you that there are at least three earmarks here that suggest these are commissions instead of bonuses, in addition to the history, and tell me why this view is wrong. One is that these are such a huge portion of at least this person's compensation, well over two-thirds in the relevant time period. The second is that they are mandatory, not discretionary. And the third is that they are based on her individual performance. They are based on her individual performance. Again, Judge, I don't believe they're mandatory. She only gets them if she earns them under the terms of the agreement. And, again, going back to the Wage, Payment, and Collection Act. We are obviously missing connections completely. They are mandatory if she meets the numbers. Correct. If she earns them. If she earns them, yes. But that doesn't mean it's always going to be two-thirds of her compensation, Judge. I guess that's where I'm struggling. It depends on what her performance is in a particular year. But this formula, as it works, winds up being a very large portion of her performance. In her particular case, yes, Judge. But, again, this is whether or not the compensation plan itself for everyone, whether it's a commission or a bonus. Again, I go back to I don't think you could assume that for everyone that is going to be the majority of their compensation. And, certainly, there are going to be employees that don't get less. Counsel. Oh, sorry. Let me ask you one other question. Sure. On your brief, in your brief at page 5, you say incentive payments accrued when customer invoices were distributed, as was already the case for plaintiff under the 2010 Office Max plan, and were earned upon quarterly payment. Can you explain the difference to me between accrued and earned as you're using it there? It's in the middle of the page. Yes. While you may, there may be, the accrual was basically, okay, this is the amount that could be paid out. But it was a term and condition in the Illinois Wage Payment and Collection Act. The regulations in cases have recognized that employers can properly have as a condition for actual earning an incentive. For a bonus. For a bonus. And I would submit, Judge, there's nothing that suggests that you can't do it for a commission. Because, again, commissions are governed by the terms of the agreement. Are we talking, counsel, are we talking about the same thing? I thought you were referring to the provisions in the regulations and the statute that allow, please listen to me, that allow an employer to say, we're not paying you unless you are still an employee as of the date of payment. Right? Correct. That's allowed for bonuses. It's not for commissions. I don't think there's anything in the law, Judge, that says it's not allowed for commissions. Oh, really? If you go back to commissions, ultimately, the employer under the Illinois law and under the case law, I would say an employer can establish what the terms of earning a commission was. And Judge Easterbrook was on a panel in the truth matter. It doesn't make any difference, counsel, who was on a panel. Decisions of the court speak for the court. Understood, Judge. The Seventh Circuit in the first matter specifically talked about the pure hearing cause doctrine, which I believe is what you're referencing, Judge. And that only applies absent an agreement to the contrary. So, clearly, Illinois law recognizes that an employer can set the terms and conditions for earning a commission as well as a bonus. And in this case, again, this ultimately comes down to the Wage Payment and Collection Act enforces. So what Illinois decision would you rely on for the proposition that an employer can define a commission as unearned just because the employment ends before it's paid? Judge, I believe that the Firth decision supports that because what if- The which decision? I'm sorry. It's Firth v. Inc. Publishing, 823 F. 2nd, 1178. I don't know about you, but I don't believe the Illinois courts publish their decisions in the Federal Reporter. I apologize, Judge. I asked for the best Illinois case. We're trying to interpret state law. Understood. Judge, I believe in our brief we have some cases about a referred to pure hearing cause. I would have to go back and review our brief, and I would be happy to submit that if I can locate an Illinois decision that's similar to the Firth one. No, your brief is what it is. Okay. So, again, I guess I see my time is getting short. But I understand, you know, with regard to plaintiff's claim that the company could not change the terms and conditions of her compensation, I think the case law is clear. I believe that the Office Max agreement- As a general rule, that's right. I had understood, though, there to be an argument, at least in plaintiff's brief, that plaintiff didn't actually find out until about September of 2015 how much she had been earning in that interim period between July 2014 and March 2015. Judge, I believe that there was testimony that she hadn't received her commission statement yet because they were in the process of transition. But I would submit, Judge, that she, as far as whether there was an enforceable agreement, she understood and she admitted at her deposition in the record, and I think the parties agree, the record is undisputed. She was made aware of the compensation change in July 2014. She admitted she understood those terms and conditions. She understood that she would not be eligible to receive quarterly incentive if she left before the payment was made. And she admitted that those terms were later memorialized in the agreement. But, yes, Judge, as far as there was a delay, I understand in the record that about getting actual commission statements in the transition. Given that delay, how is it fair to infer plaintiff's agreement to the different terms if she's not yet really been told what they are? She gets an outline on July 14th. There's this ongoing discussion, and who knows what it means until she gets the payment. I believe she admitted at her deposition she understood the essential terms and conditions of the compensation plan change and that she admitted at her deposition that when she received the written document, it was consistent with her understanding and that she ultimately was paid all money owed under that agreement. Now, she disagreed with some of the changes, but she admitted under the terms of those agreements, she was paid all money owed. Okay, thank you. Could I just ask you briefly, do you think this $250 a month draw is required to comply with the Illinois statute? Judge, I see my time is about up. I believe in this case that because Ms. Johnson, as well as all the other sales reps, received a monthly salary, that the requirements of the Illinois Wage Payment and Collection Act was met because of that monthly salary. Moreover, the draw toward the commission, I would submit that that was a monthly commission payment, if you would deem it a commission that would comply with Illinois law and would be cheered up once the quarterly incentives were reconciled. But only if she's still an employee, and the $250 monthly draw, by my estimate, is about one day's worth of incentive payments for the plaintiff. Well, it depends, again, on what her performance is. But, okay, thank you. Thank you, counsel. Anything further, Mr. Gianpietro? No, Your Honor. All right, well, thank you very much to both counsel. The case is taken under advisement.